Argued September 11, 1970, modified June 16, 1971

SHEPARD & MORSE LUMBER CO., *Respondent,*
*v.* CLAWSON ET AL, *Appellants.*

486 P2d 452

In Banc

Donald L. Kalberer, Judge.

*George C. Van Natta,* St. Helens, argued the cause and filed a brief for appellants.

*David O. Bennett,* St. Helens, argued the cause for respondent Shepard & Morse Lumber Co. With him on the brief were Bennett, Vagt & Olsen.

Before O'Connell, Chief Justice, and McAllister, Denecke, Tongue,* Howell, Schwab and Mengler, Justices.

O'CONNELL, C. J.

This is an appeal by two judgment creditors from a decree quieting title to certain real property owned by plaintiff.

The property was originally owned by Guy and Jessie Hendricks, who recorded a notice of homestead exemption on April 4, 1956. On April 12, 1957, three judgments were obtained and docketed against the Hendrickses. These judgments are now held by defendants Clawson and Credit Bureau of Columbia County, Inc.

After the judgments were docketed the Hendrickses conveyed the property to plaintiff. Plaintiff entered into a land sale contract with Donald and Elsie Anderson as purchasers. Subsequently, in 1964 Clawson levied execution on the property and purchased it at sheriff's sale for the amount of the judgments.

In *Clawson v. Anderson,* 248 Or 347, 434 P2d 462 (1967), we set aside the sheriff's sale, holding that the title which plaintiff took as purchaser from

---

* Tongue, J., did not participate in this decision.

the Hendrickses "carried with it the benefit of the homestead exemption" and that there could not be a legally effective judicial sale of the property unless and until there was a prior determination that the property was worth more than the amount of the homestead exemption ($5,000 at that time). We said:

"In the present case there was no judicial determination that an excess existed at the time of the levy and execution sale. We must hold, therefore, that the execution sale was void and that title did not pass to [Clawson]. However, the abortive execution sale would not have the effect of vitiating [Clawson's] judgment and consequently, if the judgment is not invalid upon other grounds, [Clawson] may proceed by way of a creditor's bill to establish his interest, if any, in the property." 248 Or at 352-53 (1967).

The judgments were renewed in ex parte proceedings in 1965 and 1966. As a result of the decision in *Clawson v. Anderson, supra,* plaintiff's title to the property was affirmed subject, of course, to the contract interest of the Andersons and the judgment liens which had been renewed; but these judgments were, in turn, subject to the $5,000 homestead exemption which followed the property when it was conveyed to plaintiff.

Although it was held in *Clawson v. Anderson* that Clawson had the right to proceed by way of a creditor's bill to assert whatever rights he had as the holder of the judgments, Clawson never asserted that right. To resolve the question of the judgment creditor's interest in the property, plaintiff brought the present suit to quiet title.

The trial court entered the following decree:

"DECREED that any rights the defendants may have in the hereinafter described property is in

excess of the value of the homestead in said property based upon the value of the property at the time of the conveyance thereto to plaintiff by Guy H. Hendricks and Jessie M. Hendricks on April 12, 1957; and it is further

"DECREED that the value of the property at the time of the conveyance to plaintiff on April 12, 1957, was the sum of $7,800; and it is further

"DECREED that the defendants J. H. Clawson and Credit Bureau of Columbia County, Inc. are entitled to the excess of the value of the property over the homestead in the amount of $2,800; * * *"

Clawson and the credit bureau appeal, contending that they are entitled to a recovery based on the value of the property at the time of the present suit rather than the value on April 12, 1957, the date of the conveyance by the Hendrickses to plaintiff (less the $5,000 homestead exemption).

If the property purchased by plaintiff had not been claimed as a homestead, it would be clear that the judgment creditors could postpone the levy of execution on their judgments and be entitled to have the amount realized at the execution sale applied toward the satisfaction of their judgments; the judgment creditors would not be limited to the value of the property at the time it was transferred by the debtor to his grantee.

1. The same principle should be applied when the property transferred is homestead property. The judgment lien should attach to the extent that the value of the land exceeds the statutory amount of the homestead exemption whether that surplus amount existed at the time of the sale by the homestead owner or arose later as a result of an increase in the value of the land.

If the land had remained in the ownership of the homestead claimant, any increase in the value of the land above the amount of the homestead exemption would be subject to sale on execution to apply on the judgment. There is no reason for any different rule merely because at the time the judgment creditor decides to enforce his judgment lien the land is held by a transferee of the homestead claimant. There is nothing in the language of our homestead exemption statutes which calls for a different result and we have been unable to think of any policy underlying the homestead exemption which would warrant a statutory interpretation limiting the judgment creditor's lien to the value of the land at the time of the sale by the homestead claimant.

2. Plaintiff contends that it is immaterial whether the value of the property is fixed at the time of transfer or at the date of the execution sale because in any event the judgments are void. This contention rests upon the ground that because the judgments had been renewed in an ex parte proceeding without notice to the judgment debtor or his transferee the judgments are void.

The statute permitting the renewal of a judgment is ORS 18.360, which provides as follows:

"Whenever, after the entry of a judgment, a period of 10 years shall elapse, the judgment and the lien thereof shall expire. However, before the expiration of 10 years the circuit court in which such judgment was docketed, on motion, may renew such judgment and cause a new entry of the same to be made in the judgment docket, after which entry the lien of the judgment shall continue for another 10 years unless sooner satisfied, and after which entry execution may issue upon such judgment for another 10 years."

The statute is silent as to the necessity for notice as a condition precedent to the validity of a renewed judgment.

We must turn, then, to the statute dealing with the requirement for a notice of motion. This is ORS 16.730, which provides as follows:

"When a notice of a motion is necessary, it shall be served 10 days before the time appointed for the hearing; but the court or judge thereof may prescribe, by order indorsed upon the notice, a shorter time. Notice of a motion is not necessary except when required by statute, or when directed by the court or judge in pursuance thereof."

It will be noted that the foregoing section provides that "Notice of a motion is not necessary except when required by statute * * *." As we have already observed, ORS 18.360, which provides for the renewal of judgment, does not require a notice of motion as a necessary part of the procedure in renewing a judgment. Reading the two statutes together we have, then, a clear indication of the legislative purpose to dispense with notice in the procedure for the renewal of judgments.[1]

Plaintiff relies upon *Stephens v. Stephens,* 170 Or 363, 366, 132 P2d 992 (1943) for the contrary view, where it was said, "We agree that plaintiff was entitled to notice of motion to renew the judgment * * *." An examination of the briefs in *Stephens* discloses that the question of notice was not a point of argument. Neither the parties nor the court mentioned ORS 16.730 (then OCLA 10-503). The state-

[1] ORS 18.360 and ORS 16.730 were so construed in Jacobs v. Sprague, 131 Cal App2d 885, 280 P2d 919 at 920-21 (1955) where the court was called upon to apply Oregon law.

ment made in the *Stephens* case was obviously made without a careful consideration of the statutes and must, therefore, be rejected as an expression of the Oregon law. In this respect, then, *Stephens v. Stephens, supra,* is overruled.

3. Plaintiff also contends that to allow a renewal of the judgment without notice would render the renewed judgment void "for want of due process or due course of law," apparently relying upon Oregon Constitution, Art I, § 10.

This contention is without merit. There was adequate notice to give validity to the original judgment. And ORS 18.360 informs all judgment debtors that judgments may be renewed for an additional 10-year period. The renewed judgment is not the product of a new action but is simply an extension of the original proceeding.[⊗] The legislature has, in effect, declared that judgments are viable for twenty years subject to the requirement that at the end of ten years renewal procedures be followed. We see no constitutional objection to the ex parte continuation of the judgment.

The cause is remanded with directions to delete from the decree the limitation setting the value of the property as of the time of the conveyance by the homestead claimants.

---

[⊗] See Riesenfeld, Creditors' Remedies and Debtors' Protection 25-27 (1967), citing Berly v. Sias, 152 Tex 176, 255 SW2d 505 (1953). "The instant case represents the traditional rule that *scire facias* proceedings, in contrast to an action of debt on the judgment, constitute a continuation of the action in which the (dormant) judgment was rendered and that therefore venue and parties remain identical. The judgment in such proceedings is no new money judgment but a judgment ordering that execution may issue on the prior judgment."